IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DOWNUNDER WIRELESS, LLC | § § § | |
| vs. | § § | CASE NO. 2:09-CV-365-DF-CE |
| SAMSUNG ELECTRONICS AMERICA, INC., ET AL. | § § § | |

| | | |
|---|---|---|
| DOWNUNDER WIRELESS, LLC | § § | |
| vs. | § § | CASE NO. 2:09-CV-206-DF-CE |
| HTC CORP., ET. AL. | § § | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiff DownUnder Wireless, LLC ("DownUnder") filed suit against numerous defendants, including HTC Corp., LG Electronics Mobilecomm U.S.A., Inc., Motorola, Inc., Nokia Corp., Pantech Wireless, Inc., Personal Communications Devices, LLC, Sony Ericsson Mobile Communications (USA), Inc., Samsung Electronics Co., LTD., and Samsung Telecommunications America LLC. Defendants HTC Corp., Pantech Wireless, Inc., Personal Communications Devices, LLC, and Sony Ericsson Mobile Communications (USA), Inc. have settled their disputes with DownUnder. As such, the only defendants remaining at this time are LG Electronics Mobilecomm U.S.A., Inc., Motorola, Inc., Nokia Corp., Samsung Electronics Co., LTD., and Samsung Telecommunications America LLC (collectively "Defendants").

DownUnder alleges that Defendants infringe U.S. Patent No. 6,741,215 (the "'215 Patent"). Because the same patent is at issue in both of the above-captioned cases, the cases were consolidated for claim construction purposes. The court held a *Markman* hearing on

December 16, 2010. After considering the submissions and the arguments of counsel, the court issues the following order concerning the parties' claim construction disputes.

## II.	THE PATENT-IN-SUIT

The '215 Patent is entitled "Inverted Safety Antenna for Personal Communication Devices" and claims to provide "a novel geometry for the placement of components on a personal wireless communication device…to greatly reduce the radiation impinging on a user's head and brain." '215 Patent at Abstract. The summary of the invention explains that:

> The disclosed invention solves the radiation problem for wireless communication devices by placing the transmitting antenna on the bottom of the communication device. Radiation levels can be further reduced by angling the transmitting antenna on the bottom of the communication device so that it angles away from the user's face while in use. The phone housing may also be angled so that the bottom portion of the phone is positioned away from the user's head and brain, which effectively positions the transmitting antenna significantly away from the user's head and brain. The result is that the user absorbs less total energy, and the highest intensity electromagnetic radiation ("hot spot") next to the brain can be eliminated.

*Id.* at 2:20-32. Claim 1 of the '215 Patent is representative of the claimed invention and is reproduced below:

> A wireless communication device, comprising:
> 
> a) a housing
> 
> b) a microphone;
> 
> c) a speaker earpiece;
> 
> d) a user interface mounted in an upright orientation on the communication device;
> 
> e) a transmitting antenna;
> 
> f) wherein, said housing comprising an upper housing portion on top and a lower housing portion on the bottom;

g) wherein, said speaker earpiece is mounted in said upper housing portion and defines a resting surface for resting against a user's ear to communicate sound to the user's ear;

h) wherein, said transmitting antenna for transmitting electromagnetic signals mounted in said lower housing portion;

i) wherein, said microphone is positioned on the communication device to detect audible sounds from the user;

j) wherein, during use, the communication device positions said transmitting antenna away from the user's ear because of the distance between said speaker earpiece and said transmitting antenna, and

k) said housing defines an obtuse angle between the top of said upper housing portion and the bottom of said lower housing portion such that the bottom of said housing is positioned substantially away from both the plane defined by said resting surface and the user's face during use, whereby the position of said transmitting antenna is angled away from the user's head and face during use.

### III.     GENERAL PRINCIPLES GOVERNING CLAIM CONSTRUCTION

"A claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the protected invention." *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999). Claim construction is an issue of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

To ascertain the meaning of claims, the court looks to three primary sources: the claims, the specification, and the prosecution history. *Markman*, 52 F.3d at 979. The specification must contain a written description of the invention that enables one of ordinary skill in the art to make and use the invention. *Id.* A patent's claims must be read in view of the specification, of which they are a part. *Id.* For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims. *Id.* "One purpose for examining the specification is to determine if the patentee has limited the scope of

the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).

Nonetheless, it is the function of the claims, not the specification, to set forth the limits of the patentee's invention. Otherwise, there would be no need for claims. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc). The patentee is free to be his own lexicographer, but any special definition given to a word must be clearly set forth in the specification. *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1388 (Fed. Cir. 1992). Although the specification may indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than the embodiments. *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

This court's claim construction decision must be informed by the Federal Circuit's decision in *Phillips v. AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). In *Phillips*, the court set forth several guideposts that courts should follow when construing claims. In particular, the court reiterated that "the *claims* of a patent define the invention to which the patentee is entitled the right to exclude." 415 F.3d at 1312 (emphasis added) (*quoting Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To that end, the words used in a claim are generally given their ordinary and customary meaning. *Id*. The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id*. at 1313. This principle of patent law flows naturally from the recognition that inventors are usually persons who are skilled in the field of the invention and that patents are addressed to and intended to be read by others skilled in the particular art. *Id*.

The primacy of claim terms notwithstanding, *Phillips* made clear that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id*. Although the claims themselves may provide guidance as to the meaning of particular terms, those terms are part of "a fully integrated written instrument." *Id*. at 1315 (quoting *Markman*, 52 F.3d at 978). Thus, the *Phillips* court emphasized the specification as being the primary basis for construing the claims. *Id*. at 1314-17. As the Supreme Court stated long ago, "in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims." *Bates v. Coe*, 98 U.S. 31, 38 (1878). In addressing the role of the specification, the *Phillips* court quoted with approval its earlier observations from *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998):

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

*Phillips*, 415 F.3d at 1316. Consequently, *Phillips* emphasized the important role the specification plays in the claim construction process.

The prosecution history also continues to play an important role in claim interpretation. Like the specification, the prosecution history helps to demonstrate how the inventor and the PTO understood the patent. *Id.* at 1317. Because the file history, however, "represents an ongoing negotiation between the PTO and the applicant," it may lack the clarity of the specification and thus be less useful in claim construction proceedings. *Id*. Nevertheless, the

5

prosecution history is intrinsic evidence that is relevant to the determination of how the inventor understood the invention and whether the inventor limited the invention during prosecution by narrowing the scope of the claims.  *Id.*

*Phillips* rejected any claim construction approach that sacrificed the intrinsic record in favor of extrinsic evidence, such as dictionary definitions or expert testimony.  The *en banc* court condemned the suggestion made by *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), that a court should discern the ordinary meaning of the claim terms (through dictionaries or otherwise) before resorting to the specification for certain limited purposes.  *Phillips*, 415 F.3d at 1319-24.  The approach suggested by *Texas Digital*—the assignment of a limited role to the specification—was rejected as inconsistent with decisions holding the specification to be the best guide to the meaning of a disputed term.  *Id.* at 1320-21.  According to *Phillips*, reliance on dictionary definitions at the expense of the specification had the effect of "focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent."  *Id.* at 1321.  *Phillips* emphasized that the patent system is based on the proposition that the claims cover only the invented subject matter.  *Id.*  What is described in the claims flows from the statutory requirement imposed on the patentee to describe and particularly claim what he or she has invented.  *Id.*  The definitions found in dictionaries, however, often flow from the editors' objective of assembling all of the possible definitions for a word.  *Id.* at 1321-22.

*Phillips* does not preclude all uses of dictionaries in claim construction proceedings.  Instead, the court assigned dictionaries a role subordinate to the intrinsic record.  In doing so, the court emphasized that claim construction issues are not resolved by any magic formula.  The court did not impose any particular sequence of steps for a court to follow when it considers

disputed claim language. *Id*. at 1323-25. Rather, *Phillips* held that a court must attach the appropriate weight to the intrinsic sources offered in support of a proposed claim construction, bearing in mind the general rule that the claims measure the scope of the patent grant.

At issue in this case is whether certain claims of the '215 Patent are indefinite. A claim is invalid for indefiniteness if it fails to particularly point out and distinctly claim the subject matter that the applicant regards as the invention. 35 U.S.C. § 112, ¶ 2. To prevail on an indefiniteness argument, the party seeking to invalidate a claim must prove "by clear and convincing evidence that a skilled artisan could not discern the boundaries of the claim based on the claim language, the specification, and the prosecution history, as well as her knowledge of the relevant art area." *Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008). The primary purpose of the definiteness requirement is to ensure public notice of the scope of the patentee's legal right to exclude, such that interested members of the public can determine whether or not they infringe. *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005); *Halliburton*, 514 F.3d at 1249; *Honeywell Int'l Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1338 (Fed. Cir. 2003). Courts apply the general principles of claim construction in their efforts to construe allegedly indefinite claim terms. *Datamize*, 417 F.3d at 1348; *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1346 (Fed. Cir. 2007). A claim is indefinite only when a person of ordinary skill in the art is unable to understand the bounds of the claim when read in light of the specification. *Miles Labs., Inc. v. Shandon, Inc*., 997 F.2d 870, 875 (Fed. Cir. 1993); *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co*., 537 F.3d 1357, 1371 (Fed. Cir. 2008). A determination of claim indefiniteness is a conclusion of law. *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375-76 (Fed. Cir. 2001); *Datamize*, 417 F.3d at 1347.

A claim is indefinite only if the claim is "insolubly ambiguous" or "not amenable to

construction." *Exxon*, 265 F.3d at 1375; *Young*, 492 F.3d at 1346; *Halliburton*, 514 F.3d at 1249; *Honeywell*, 341 F.3d at 1338-39. A court may find a claim indefinite "only if reasonable efforts at claim construction prove futile." *Datamize,* 417 F.3d at 1347. A claim term is not indefinite solely because the term presents a difficult claim construction issue. *Id.; Exxon*, 265 F.3d at 1375; *Honeywell*, 341 F.3d at 1338. "If the meaning of the claim is discernable, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, . . . the claim [is] sufficiently clear to avoid invalidity on indefiniteness grounds." *Exxon*, 265 F.3d at 1375; *Halliburton*, 514 F.3d at 1249.

IV. **CLAIM TERMS IN DISPUTE**

a. **"said housing defines an obtuse angle between the top of said upper housing portion and the bottom of said lower housing portion" [Claim 1] / "said housing defines an obtuse angled portion between said upper and lower portions" [Claim 12]**

| Representative Claim Language | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| **said housing defines an obtuse angle between the top of said upper housing portion and the bottom of said lower housing portion** such that the bottom of said housing is positioned substantially away from both the plane defined by said resting surface and the user's face during use, whereby the position of said transmitting antenna is angled away from the user's head and face during use. | said housing, by virtue of its geometry, provides an angle between 90 and 180 degrees between the top of said upper housing portion and the bottom of said lower housing portion | said housing is <u>not substantially in line</u>, and the longitudinal surfaces <u>on the back</u> of the upper and lower housing portions when in use define two planes which intersect at an angle between 90 and 180 degrees |

The parties agree that these phrases in Claims 1 and 12 should be given the same construction. The parties' main dispute centers on the two following issues: (1) whether the patentees disclaimed phone housings that were substantially in line; and (2) whether the claimed obtuse angle must be defined by the back of the phone.

8

With regard to the first issue, Defendants argue that during the prosecution of the '215 Patent, the patentees disclaimed all "substantially in-line" embodiments, including Figures 3, 5, 6A, 8, and 10. Although Plaintiffs agree that the patentees did disclaim Figure 3 during prosecution, they argue that the scope of the disclaimer is not broad enough to encompass the other embodiments. Specifically, Plaintiffs argue that the disclaimer was limited to phones in which the speaker earpiece, the upper housing portion, and the lower housing portion are on the *same plane* as disclosed in Figure 3 depicted below:



'512 Patent at Figure 3. Plaintiff argues, however, that embodiments in which the earpiece and the housing portions are not depicted as being on the same plane, such as those depicted below, were not disclaimed:



'512 Patent at Figures 8 and 10.

As originally filed, Claim 1 of the '512 Patent listed the known components of a cellular phone and then recited:

> h) wherein, said transmitting antenna for transmitting electromagnetic signals…mounted in said lower housing portion;

9

j) wherein, during use, the communication device positions said transmitting antenna away from the user's ear because of the distance between said speaker earpiece and said transmitting antenna.

Ex. 2 at DUW0000109, attached to Defendants' Responsive Claim Construction Brief, Dkt. No. 162. The application went on to disclose embodiments, falling into two categories: (1) devices with a substantially in-line housing configuration; and (2) devices with a backward-angled lower housing portion.

After explaining that Figures 1, 2A, and 2B showed prior-art cellular phones with antennas at the top, the '215 Patent describes a first embodiment in Figure 3 where "the *body of the communication device is straight and the antenna 66 is substantially in-line with the body of the device*." '215 Patent at 6:1-4 (emphasis added). Figure 5, shown below, is described as a "perspective view of the communication device 60 seen used in FIG. 3:"



*Id.* at 6:29–30; *id.* at Figure 5. The '512 Patent states: "[a]s seen in FIG. 5, even *a straight housing design*, with the antenna on the bottom significantly reduces…radiation…." *Id.* at 7:32–34 (emphasis added). The same housing configuration is shown in Figures 8 and 10. *See, e.g., id.* at 9:1–3 ("FIG. 10 shows another alternative phone 120. This design shows a pivotal antenna 122 mounted on the *same communication device housing as seen in FIG. 5*.") (emphasis added). The last of the in-line embodiments is shown in Figure 6A which is depicted below and is described as having multiple bends "even though the bottom of the *housing may still be in-line*":



**Fig. 6A**

*Id.* at 7:19–23 (emphasis added); *id.* at Figure 6A.

Considering the specification's description of the disclosed embodiments, the court is unconvinced by Plaintiff's argument that "substantially in-line" as used in the '215 Patent requires that the speaker earpiece, the upper housing portion, and the lower housing portion be on the same plane. As illustrated above, the specification describes the embodiments depicted in Figures 5, 6A, 8, and 10 as "in-line," yet none of those figures depicts the earpiece and the housing portions on the same plane. As such, the court agrees with Defendants that the embodiments depicted in Figures 3, 5, 6A, 8, and 10 depict what the patentees described as "straight" or "substantially in-line" embodiments. *See id.* at 10:56–57 ("Phone 150 may also have a stable position in a substantially in-line (straight configuration)…").

Furthermore, the court agrees with Defendants that, as originally filed, Claim 2 of the application was directed to these "straight" or "substantially in-line" embodiments:

> 2. The wireless communication device in claim 1, wherein;
>
> > a) said *resting surface, said upper housing portion, and said lower housing portions are substantially in-line with each other*, whereby said transmitting antenna is oriented substantially below the earpiece and away from the user's brain during use.

Ex. 2 at DUW0000109, attached to Defendants' Responsive Claim Construction Brief, Dkt. No. 162. On September 16, 2003, the examiner rejected originally filed Claims 1 and 2 as anticipated by U.S. Patent Application 09/095,487 (July 13, 2001) ("Song"). *See id.* at

DUW000026–31, DUW000029. Song disclosed a wireless phone with an antenna that hinged out from the bottom of the phone, with embodiments that included a straight housing and a lower portion angled toward the user, as shown below:



*Id.* at Ex. 3. The examiner explained that "Song teaches that the resting surface, the upper housing portion, and the lower housing portions *are substantially in-line* with each other" and, therefore, rejected originally filed Claim 2. *Id.* at Ex. 2 DUW000029 (emphasis added). After rejecting proposed Claims 1 and 2, the examiner found Claim 3 allowable because Song did not teach:

> that the housing defines an obtuse angle between the top of the upper housing portion and the bottom of the lower housing portion such that the *bottom of the housing as a whole is angled substantially away from both the plane defined by the resting surface and the user's face*....

*Id.* at Ex. 2 at DUW000030 (emphasis added).

In response, the patentees agreed that Claims 1 and 2 were anticipated, stating that they acknowledged the rejection of independent Claim 1 and dependent Claim 2 and agreed with the examiner that the claims were anticipated by Song. *Id.* at DUW000024. The patentees, therefore, cancelled Claim 2 and rewrote Claim 1 to include the limitations of Claim 3, which disclosed limitations requiring a backward-angled lower housing portion. *Id.* Considering this, the court finds that the patentees disclaimed all embodiments employing the "substantially in-

line" or "straight" configuration, which includes the embodiments disclosed in Figures 3, 5, 6A, 8, and 10.

Applying this disclaimer to the parties' proposed constructions of "said housing defines an obtuse angle between the top of said upper housing portion and the bottom of said lower housing portion," the court agrees with Defendants that Plaintiff's proposed construction would capture the "substantially in-line" embodiments disclaimed during prosecution. The court, therefore, rejects Plaintiff's proposed construction. Defendants' proposed "not substantially in-line" limitation, however, accurately captures the patentees' disclaimer of "substantially in-line" or "straight" embodiments.

Furthermore, the court concludes that Defendants' proposed limitation requiring that "the *longitudinal surfaces on the back of the upper and lower housing portions* when in use define two planes which intersect at an angle between 90 and 180 degrees" accurately reflects that claim language in view of the use of the words "housing defines," together with the specification and the file history. Claims 1 and 12 recite that the "housing defines an obtuse angle." Here, the use of the word "defines" means the angle physically created by the housing – not, as Plaintiff proposes, any manufactured angle that can be drawn between any two points on or through the housing. *See C.R. Bard, Inc. v Medtronic, Inc.*, 2000 U.S. App. LEXIS 15316 at *8–9 (Fed. Cir. 2000) (nonprecedential). This conclusion is further supported by the fact that when the term "obtuse angle" appears in the specification, it refers to element 74 in Figures 6 and 7B or to element 169 in Figures 12A and 12B. '215 Patent at 7:4–7 (element 74, Fig. 6); *id.* at 7:67–8:2 (element 74, Fig. 7B); *id.* at 10:2–5 (element 169, Figs. 12A & 12B); *id.* at 10:60–62 (element 169, Figs. 12A & 12B). These "obtuse angle" elements, 74 and 169, depict the intersection of two lines parallel to the back surfaces of the upper and lower portions of the

phone. Moreover, as explained above, the court has concluded that the claims of the '215 Patent are limited to wireless devices in which the lower portion of the housing is not substantially in-line with, but rather is angled away from, the user's head and face. Angling the housing away from the user's face requires an obtuse angle at the back of the phone.

In conclusion, the court adopts Defendants' proposed construction of "said housing defines an obtuse angle between the top of said upper housing portion and the bottom of said lower housing portion" because it accurately reflects the prosecution history disclaimer of "substantially in-line" devices and stays true to the claimed requirement that the "housing define" an obtuse angle. Accordingly, the court construes this phrase to mean "said housing is not substantially in-line, and the longitudinal surfaces on the back of the upper and lower housing portions when in use define two planes which intersect at an angle between 90 and 180 degrees."[1]

### b. "said obtuse angle is defined by a slowly curving section of the housing between the upper and lower portion of the housing" [Claim 5]

| Representative Claim Language | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| 5. The wireless communication device in claim 1, wherein; **said obtuse angle is defined by a slowly curving section of the housing between the upper and lower portion of the housing.** | said obtuse angle is provided by gentle arcing bends of the housing between the upper and lower portion of the housing | indefinite |

Plaintiff concedes that the "said obtuse angle" reference in Claim 5 refers to the obtuse angle formed by the housing in Claim 1. Furthermore, during the claim construction hearing,

---

[1] The court has construed this term in accordance with the parties' claim construction arguments and proposed constructions. The court, however, notes that in applying this construction one must consider that a person of ordinary skill in the art would understand that the construction refers to a three dimensional phone, rather than a geometric figure. Any infringement determination would take this into account.

Plaintiff also conceded that if the court agrees with Defendants that the obtuse angle must be defined by the planes of the upper and lower housing portions, then this term is indefinite. Considering that, as explained above, the court agrees with Defendants on this point, the court also agrees with Defendants that Claim 5 is indefinite.

### c. "whereby the position of said transmitting antenna is angled away from the user's head and face during use" [Claim 1]

The parties have agreed that this term means "whereby said angle defined by the housing causes the position of the transmitting antenna to be angled away from the user's head and face during use."

### d. "lower portion of said housing is angled substantially further away from the user's face than if the housing were substantially straight" [Claim 12]

The parties have agreed that this term means "said obtuse angled portion causes the lower portion of the housing to be angled substantially further away from the user's face during use than if the housing were substantially straight."

### e. "said housing comprising an upper housing portion on top and a lower housing portion on the bottom" [Claim 1]

| Representative Claim Language | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- | --- |
| wherein, **said housing comprising an upper housing portion on top and a lower housing portion on the bottom**; | the housing contains an upper portion that is above the lower portion | a housing comprising two distinguishable portions, the upper portion being located above the lower portion along the length of the phone |

Prior to the claim construction hearing, the parties agreed that the correct construction of this term should include a limitation requiring that the "housing comprise two distinguishable portions." The parties, however, continue to dispute whether, as Defendants propose, the upper housing portion must be located above the lower housing portion "along the length of the

15

phone." Defendants' proposed construction would require a vertical spatial relationship in which the upper housing portion of the phone is located above the lower housing portion of the phone. Defendants argue that their proposed construction is necessary because all of the disclosed embodiments depict such a relationship. Nothing in either the plain language of the claims or the specification, however, requires that the upper housing portion be located above the lower housing portion *along the length of the phone*. As such, the court rejects this proposed limitation.

In conclusion, the court concludes that "wherein, said housing comprising an upper housing portion on top and a lower housing portion on the bottom" means "a housing comprising two distinguishable portions, the upper portion being located above the lower portion."

### f. "said speaker earpiece is mounted in said upper housing portion and defines a resting surface for resting against a user's ear" [Claim 1]

| Representative Claim Language | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| wherein, **said speaker earpiece is mounted in said upper housing portion and defines a resting surface for resting against a user's ear to communicate sound to the user's ear**; | the speaker earpiece provides a surface by which the user can rest his or her ear | said speaker earpiece is mounted in said upper housing and a resting surface for resting against a user's ear is defined by the front face of said upper housing |

Claim 1 of the '215 Patent recites: "wherein, said speaker earpiece is mounted in said upper housing portion and defines a resting surface for resting against a user's ear to communicate sound to the user's ear." The primary dispute with respect to this term is whether the speaker earpiece defines the "resting surface," as Plaintiff proposes, or whether the "resting surface" is defined by the front face of the phone, as Defendants suggest. The plain language of this element recites that the speaker earpiece must be: (1) located in the upper housing portion; and (2) define a resting surface for resting against a user's ear to communicate sound to the

16

user's ear.  Defendants argue that despite the plain language of the claim, it is the front face of the upper housing that defines the resting surface for the user's ear.  Defendants' argument relies on its contention that the correct construction of "resting surface" must take into account how a user normally holds a phone.

Defendants' argument that the "resting surface" must be defined by the front face of the upper housing portion is unconvincing in light of the plain language of the claim and the specification.  The specification explicitly discloses the speaker earpiece, as opposed to the front face of the upper housing portion, as being placed flat against the user's ear – e.g., "*[t]his allows speaker output 86 to be placed flat against the user's ear*, while the majority of housing 88 angles away from the user's face."  '215 Patent at 8:2-4; *see also id.* at 7:59-61.  As such, the court rejects Defendants' proposed construction.

Although the Plaintiff's proposed construction accurately captures the fact that it is the speaker earpiece that provides the resting surface, it does not explicitly require that the earpiece be mounted in the upper housing portion.  The court, therefore, adopts the following construction, which explicitly reflects that the earpiece must be mounted in the upper housing: "wherein, said speaker earpiece is mounted in said upper housing portion and defines a resting surface for resting against a user's ear to communicate sound to the user's ear" means "said speaker earpiece is mounted in said upper housing portion and provides a surface for resting against a user's ear."

**g. "during use, the communication device positions said transmitting antenna away from the user's ear because of the distance between said speaker earpiece and said transmitting antenna" [Claim 1]**

| Representative Claim Language | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| wherein, **during use, the communication device positions said transmitting antenna away from the user's ear because of the distance between said speaker earpiece and said transmitting antenna**, | during use, the communication device positions said transmitting antenna away from the user's ear because of the distance between said speaker earpiece in the upper portion and said transmitting antenna <u>in the bottom</u> of the lower portion | during use, the communication device positions said transmitting antenna away from the user's ear because of the distance between said speaker earpiece in the upper portion and said transmitting antenna in the lower portion |

The sole difference between Plaintiff's and Defendants' proposed construction is that Plaintiff argues that the transmitting antenna must be placed in the bottom of the lower housing portion. Plaintiff's proposed limitation, however, is unwarranted given that the specification explicitly discloses that the antenna can be placed at other locations on the lower housing. '215 Patent at 9:56–58 ("In alternative embodiments, the antenna can be placed elsewhere on lower housing 164 and may include a pivoting antenna like antenna 102 seen in FIG. 8."). Furthermore, Plaintiff's proposed construction ignores the fact that the specification teaches that "there are many ways to attach an antenna to the communications device housing, and the exact attachment position is non-critical…as long as the antenna is sufficiently far away from the earpiece on the device." *Id.* at 11:22–25. Considering this, the court rejects Plaintiff's proposed "in the bottom" limitation.

Defendants' proposed construction accurately captures the language of the claims and the teachings of the specification. As such, the court construes this term to mean "during use, the communication device positions said transmitting antenna away from the user's ear because of

the distance between said speaker earpiece in the upper portion and said transmitting antenna in the lower portion."

### h. "whereby the electromagnetic radiation intensity experienced by the user is reduced by keeping the antenna away from the user's face" [Claim 12]

| Representative Claim Language | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| said housing defines an obtuse angled portion between said upper and lower portions so that when said earpiece is placed flat against said user's ear the lower portion of said housing is angled substantially further away from the user's face than if the housing were substantially straight, **whereby the electromagnetic radiation intensity experienced by the user is reduced by keeping the antenna away from the user's face.** | whereby the electromagnetic radiation intensity experienced by the user is lower than if the antenna was closer to the user's face | said angle in the housing keeps the antenna away from the user's face, thereby causing the electromagnetic radiation intensity experienced by the user to be reduced |

The parties' argument with regard to this claim term is whether it is solely the angle in the housing that causes the electromagnetic radiation intensity to be reduced. Plaintiff argues that it is a combination of the obtuse angle and the fact that the antenna must be in the bottom housing portion that causes the radiation reduction. The language of Claim 12, however, recites that:

> f) said housing defines *an obtuse angled portion* between said upper and lower portions so that when said earpiece is placed flat against said user's ear the *lower portion of said housing is angled substantially further away from the user's face* than if the housing were substantially straight, *whereby* the electromagnetic radiation intensity experienced by the user is reduced *by keeping the antenna away from the user's face*.

'512 Patent at 13:35–14:2 (emphasis added). The highlighted language above explains that the obtuse angle allows the housing to be angled further away from the user's face than if the

19

housing were substantially straight. Then, the claim states "whereby" the radiation intensity is reduced "by keeping the antenna away from the user's face." The use of the transition "whereby" explains that the radiation reduction, at least in this claim, is due to the angling away of the housing from the user's face. As such, the court agrees with Defendants that according to the plain language of Claim 12, it is the obtuse angle that causes the electromagnetic radiation intensity experienced by the user to be reduced. Accordingly, the court constructs this term to mean "said angle in the housing keeps the antenna away from the user's face, thereby causing the electromagnetic radiation intensity experienced by the user to be reduced."

## V. CONCLUSION

The court adopts the constructions set forth in this opinion for the disputed terms of the '512 Patent. The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the court.

It is so ORDERED.

SIGNED this 12th day of May, 2011.

_____
CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE