# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| DOWNUNDER WIRELESS, LLC | § § § § | |
| Plaintiff, | | |
| v. | § § § | Civil Action No. 2:09-cv-206-DF-CE |
| HTC CORP., ET AL.; | § § § § | **JURY TRIAL DEMANDED** |
| Defendants. | | |
| | | |
| DOWNUNDER WIRELESS, LLC | § § § § | |
| Plaintiff, | | |
| v. | § § § | Civil Action No. 2:09-cv-365-DF-CE |
| SAMSUNG ELECTRONICS CO., LTD., ET AL.; | § § § § | **JURY TRIAL DEMANDED** |
| Defendants. | § | |

**PLAINTIFF DOWNUNDER WIRELESS, LLC'S MOTION FOR RECONSIDERATION OF THE CLAIM CONSTRUCTION ORDER UNDER 28 U.S.C. § 636, FRCP 72(a) & LOCAL RULE APPENDIX B 4(A)**

## I. INTRODUCTION

The Claim Construction Order issued by Judge Everingham on May 12, 2011,[1] should be reconsidered for the following reasons:

- The Court clearly erred in holding that originally filed Claim 2 was directed to the embodiments depicted in Figures 5, 6A, 8 and 10.  Markman Order at 11;

- The Court clearly erred in asserting that the originally filed Claim 3 disclosed limitations requiring a backward-angled lower housing portion.  *Id.* at 10, 12;

- The Court clearly erred in holding that the phrase "the longitudinal surfaces on the back of the upper and lower housing portions when in use defines two planes which intersect at an angle between 90 and 180 degrees" accurately reflects the claim language in view of the use of the words "housing defines," together with the specification and the file history.  *Id.* at 13; and

- The Court clearly erred in holding that Claim 5 is indefinite.  *Id.* at 15.

## II. STANDARD OF REVIEW

A district court judge may reconsider any pretrial matter "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); *See* Fed. R. Civ. P. 72(a); L.R. Appendix B, 4(A).  "The district judge may also reconsider *sua sponte* any matter determined by a magistrate under this rule."  L.R. Appendix B, 4(A).

---

[1] The order, Doc. 194 in the 206 Action, and Doc. 212 in the 365 Action, will be referred to as the "Markman Order."

2

### III. ARGUMENT

#### A. THE COURT CLEARLY ERRED IN HOLDING THAT ORIGINALLY FILED CLAIM 2 WAS DIRECTED TO THE EMBODIMENTS DEPICTED IN FIGURES 5, 6A, 8 AND 10 AND THIS HOLDING IS CONTRARY TO LAW

The Court held that originally filed Claim 2 of the application that led to US Patent 6,741,215 ("the '215 Patent") was directed to the "straight" or "substantially in-line" embodiments allegedly disclosed and depicted in Figures 3, 5, 6A, 8 and 10. Markman Order at 11. With respect to Figures 5, 6A, 8 and 10, this holding is inapplicable and must be reversed and reconsidered.

The Court arrives at this holding by agreeing with Defendants that the embodiments depicted in Figures 3, 5, 6A, 8, and 10 show "what the patentees described as 'straight' or 'substantially in-line' embodiments." *Id.* at 11. Since originally filed Claim 2 was rejected due to the Song reference, *id.* at 12, the Court holds that the patentees disclaimed embodiments employing the "substantially in-line" or "straight" configuration, namely the embodiments disclosed in Figures 3, 5, 6A, 8, and 10. *Id.* at 12-13.

Originally filed Claim 2 was rejected in light of Figure 11 of the Song reference:



US Patent Application 09/095,487 (July 13, 2001) ("Song"), Fig. 11, Ex. 3 to Defendants' Responsive Brief. The Examiner specifically cited Figure 11 and explained that Song's Figure 11 discloses the limitations of originally filed Claim 2. Ex. 2 to Defendants' Responsive Brief, DUW000029.

As originally filed Claim 2 required a resting surface, upper and lower housing portions to be substantially in-line with each other, Plaintiff agrees that Figure 3 is a disclaimed embodiment of this claim. Figure 3 is the only figure to be a communication device described as both "straight" and "substantially in-line." Markman Order at 10; '215 Patent at 6:1-4. It is also the only embodiment that satisfies the limitations of originally filed Claim 2:



'215 Patent, Figure 3.

Figure 5, while described as "straight," does not read on Song. As shown in the figure below, the resting surface, which is the speaker earpiece, and the upper housing portion protrudes from the rest of the phone and is not in line with the lower housing portion. Transcript ("Tr."), p. 45, ll. 18-20. This is not the same as Figure 11 of Song where the speaker earpiece and upper housing portion are all on the same plane and therefore the antenna is not placed any further distance away from the user. *Id.* at ll. 23-25. In Figure 5, there is a distance that is placed

4

between the plane defined by the speaker earpiece and the bottom of the phone such that there is an obtuse angle between the top of the upper portion and the bottom of the lower portion. *Id.* at p. 45 ll. 25 – p.46 ll. 1-5. Thus, Figure 5 not only does not meet the limitations of originally filed Claim 2, it meets the limitations of originally filed Claim 3, which contained the "obtuse angle" limitation, and at least Claim 1 of the '215 Patent:



'215 Patent, Figure 5. As Figures 8 and 10 use a similar housing as Figure 5, Figures 8 and 10 as well read on the limitations of originally filed Claim 3 and at least Claim 1 of the '215 Patent:



'215 Patent, Figures 8, 10.

The Court appears to rely heavily on the following sentence from the specification in its support of its holding: "In Fig. 5 we see a perspective view of a communication device 60 as

5

seen used in Fig. 3." '215 Patent at 6:29-30; Markman Order at 10. The Court appears to conclude that Figure 5 is the same as Figure 3 on the basis of this statement. This statement, however, does not indicate that Figure 5 is the same as Figure 3. This sentence was, *verbatim*, in the original application. Ex. 2 to Defendants' Responsive Brief, DUW000100. Thus, this language was not any sort of change in response to the Office Action rejecting originally filed Claim 2 in light of Figure 11 of Song. The original application intended to claim, in addition to other things, wireless communication devices with a bottom antenna. *See* Ex. 2 to Defendants' Responsive Brief, DUW000093 ("The disclosed invention solves the radiation problem for wireless communication devices by placing the transmitting antenna on the bottom of the communication device."). The discussion of Figure 3 in the specification focuses on the bottom antenna:

> Fig. 3 shows an alternative communication device 60. In this design the body of the communication device is straight and *antenna* 66 is substantially in-line with the body of the device. With *transmitting antenna 66 on the bottom of communication device 60*, the *antenna* is a distance 42 from the user's face, which can be significantly greater than distance 41 for prior art device 30.

*Id.* at DUW000099 (emphasis added). The only connection between Figures 3 and 5 is the fact that the antenna is on the bottom, and as such, when Figure 5 makes reference to the "perspective view" of Figure 3, it does so only with respect to the location of the antenna, not with respect any other alleged similarity in the devices. *Id.* at DUW0000100 ("In Fig. 5 we see a *perspective view* of a communication device 60 seen used in Fig. 3. This device uses standard wireless communication electronics, but *places antenna 66 and microphone 69 on the bottom of housing 61*.") (emphasis added). Furthermore, the figures themselves show that Figure 3 and Figure 5 are not the same in that the speaker earpiece in Figure 5 protrudes from the plane of the lower

housing, thereby placing the antenna a further distance from user than if the housing were substantially straight:



'215 Patent, Figures 3, 5. Thus, the Court erred in holding that Figure 3 is the same as Figure 5. Accordingly, any holding based on this holding is erroneous as well.

As to Figure 6A shown below, it clearly, on its face, does not read on Figure 11 of Song:



'215 Patent, Figure 6A. While the specification refers to this housing as being "in-line," it is not the same "in-line" as the limitation of originally filed Claim 2. The patentee is free to be his own lexicographer, but any special definition given to a word must be clearly set forth in the specification. *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1388 (Fed. Cir. 1992). Here the patentees mean "in-line" to be parallel, not "on the same plane." This is seen in Figure 6A itself, as well as statements in the specification that indicate that Figure 6A has an angled housing, and not a straight in-line housing on the same plane as disclosed and disclaimed by

7

originally filed Claim 2. '215 Patent at 7:12-14 ("The angling of the housing can take on many forms, with more than one bend being used to give the phone a pleasing look (see FIG. 6A)."); 7:15-17 ("The housing can be a stretched "S" and "Z" shaped, such as "Z" shaped housing 77 in FIG. 6A with antenna 76 on the bottom or similar shapes with smoother bends in it."); 7:20-24 ("These shapes can produce the angling of the lower portion of the housing away from the user even though the bottom of the housing may still be in-line (See FIG. 6A))". Therefore "in-line" as used in reference to Figure 6A does not have the same meaning as "in-line" as used in reference to originally filed Claim 2. Also, Figure 6A is not only not an embodiment of originally filed Claim 2, the specification expressly discloses that Figure 6A contains the obtuse angle limitation required under originally filed Claim 3 and '215 Patent, Claim 1, the limitation that the examiner agreed was not met by Song. *See id.*; Tr. at p. 51, ll. 23-25 – p. 52, ll. 1-6; Ex. 2 to Defendants' Responsive Brief, DUW000030.

Originally filed Claim 2 was only directed to Figure 3, not Figures 5, 6A, 8 and 10. As a result, the inclusion of the phrase "said housing is not substantially in-line" in the claim construction[2] should be reversed and reconsidered.

### B. THE COURT CLEARLY ERRED IN ASSERTING THAT THE ORIGINALLY FILED CLAIM 3 DISCLOSED LIMITATIONS REQUIRING A BACKWARD-ANGLED LOWER HOUSING PORTION

The Court held that originally filed Claim 3 disclosed limitations requiring a "backward-angled" lower housing portion. Markman Order at 12. The Court further held that "[a]ngling the housing away from the user's face *requires* an obtuse angle at the back of the phone." Markman Order at 14 (emphasis added). As originally filed Claim 3 (nor Claim 1 of the '215 Patent) is not so limited, the Court erred in arriving at this holding and it must be reversed and reconsidered.

---

[2] *See* Markman Order at 14.

Originally filed Claim 3 is dependent on originally filed Claim 1 and adds the following limitation:

> a) said housing defines an obtuse angle between the top of said upper housing portion and the bottom of said lower housing portion such that the bottom of said housing as a whole is angled substantially away from both the plane defined by said resting surface and the user's face, whereby the position of said transmitting antenna angled away from the user's head and face.

Ex. 3 to Defendants' Responsive Brief at DUW000078-79. The only apparent support for the Court's holding that this claim required a "backward-angled" lower housing portion is because one of the two types of embodiments disclosed in the application and patent are "devices with a backward-angled lower housing portion." Markman Order at 10. While Plaintiff concedes that there are embodiments that appear to show a "backward-angled lower housing portion," a patent is not limited to the disclosed embodiments. Here the application and patent disclose an "ear piece portion of the wireless device to be at an angle with respect to the majority of the device so that the body of the phone angles far away from the operator when used (FIGS. 7A&B)." Ex. 3 to Defendants' Responsive Brief at DUW000064; '215 Patent at 3:15-18. Also, "[t]he closer the bend occurs to the top of the housing the more of the housing is available to help extend the antenna away from the user . . . ." Ex. 3 to Defendants' Responsive Brief at DUW000070; '215 Patent at 7:10-12. Thus, the scope of the invention includes a wireless device that only has an "angled earpiece," an angled earpiece which causes the bottom of the lower portion to be "angled" away consistent with originally filed Claim 3 and Claim 1 of the '215 Patent. There is express disclosure of this in the patent. For example, Figures 7 A & B provide an embodiment employing the "angled earpiece":



'215 Patent, Figures 7 A & B. Additionally, the patent provides express disclosure related to a small flip-up speaker that angles backward: ". . . [O]ne may want a phone design to have a longer lower portion and just a smaller flip-up speaker that angles backward. This allows the lower portion with the antenna to angle the maximum distance from the user's face (see FIGS. 7A & B for a non-pivoting example of this)." '215 Patent at 11:37-42. These devices and others like it that fall under the scope of the invention, meet the limitation of the claims, have an "angled earpiece," but do not necessarily have a "backward-angled lower housing portion." Furthermore, the application and patent describe Figure 6A as an embodiment meeting the limitation of the obtuse angle claims, but it too may not necessarily be described as having a "backward-angled" lower housing portion. S*ee supra* at Section III(A).

Further, not only is the angle not required to be at the back of the phone, in the '215 Patent it is only in relation to the *front* of the phone. As shown above, originally filed Claim 3 (and Claim 1 of the '215 Patent) requires an obtuse angle with respect to the plane defined by the resting surface of the speaker earpiece. Ex. 3 to Defendants' Responsive Brief at DUW000078-79. As the speaker earpiece in question is always on the front of the phone, the obtuse angle is in relation to a plane line that is only drawn on the front of the phone. In fact, the entire '215 Patent is directed to achieving the goal of getting the bottom of the phone behind the plane line defined

by the resting surface (speaker earpiece). There is simply no relation to the back of the phone with respect to the obtuse angle. This is shown in the embodiments of the invention. For example, examine Figures 7B and 12B:



**FIG. 7B**     **FIG. 12B**

'215 Patent, Figures 7B, 12B (line added). The red lines represent the plane defined by the resting surface of the speaker earpiece. The obtuse angle limitation is satisfied <u>not</u> because the back surfaces of the upper and lower housing portions are at an obtuse angle to each other, but rather, as the claim language requires, because the bottom of the lower housing portion is at an obtuse angle with respect to the top of the upper housing portion "*such that the bottom of said housing as a whole is angled substantially away from both the plane defined by said resting*

11

*surface*" Ex. 3 to Defendants' Responsive Brief at DUW000078-79[3]. The obtuse angle for the purposes of the '215 Patent is in relation to the front (resting surface and speaker earpiece) and not the back of the phone.

Thus, originally filed Claim 3, which later became Claim 1 of the '215 Patent, does not require a "backward-angled" lower housing portion. Further, the angling of the housing away from the user's face does not require an obtuse angle *at the back* of the phone as the obtuse angle limitation is with respect to the *front* of the phone.

### C. THE COURT CLEARLY ERRED IN HOLDING THAT THE PHRASE "THE LONGITUDINAL SURFACES ON THE BACK OF THE UPPER AND LOWER HOUSING PORTIONS WHEN IN USE DEFINES TWO PLANES WHICH INTERSECT AT AN ANGLE BETWEEN 90 AND 180 DEGREES" ACCURATELY REFLECTS THE CLAIM LANGUAGE IN VIEW OF THE USE OF THE WORDS "HOUSING DEFINES," TOGETHER WITH THE SPECIFICATION AND THE FILE HISTORY AND THIS HOLDING IS CONTRARY TO LAW

The Court held that the "obtuse angle" term in Claims 1 and 12 are to be construed as "the longitudinal surfaces on the back of the upper and lower housing portions when in use defines two planes which intersect at an angle between 90 and 180 degrees," Markman Order at 13, 14. This is erroneous and contrary to law for at least three reasons: (1) as discussed above, these claims do not require a backward-angled lower housing portion; (2) as discussed above, the claims require an obtuse angle that is in relation to the front of the phone and (3) inapplicable law is relied upon to reach the holding that "define" must mean the angle is physically created by the housing. As such, this holding must be reversed and reconsidered.

The Court held that the word "defines" here means that the angle must be physically created by the housing. In support of this, the Court cites an unpublished, nonprecedential Federal Circuit opinion related to an arterial filter for removing gas bubbles and particulate

---

[3] See also '215 Patent, Claim 1 for the issued patent's counterpart to originally filed Claim 3.

material from blood. Markman Order at 13; Defendants' Responsive Brief at 9 (citing *C.R. Bard, Inc. v. Medtronic, Inc.*, 2000 U.S. App. LEXIS 15316 (Fed. Cir. 2000) (unpublished, nonprecedential)). The only housing shape disclosed in the patent at issue in that case was a toroid-shaped housing. Relying on this fact, the Court held that the term "a housing defining a substantially toroidal flow path" should be limited to toroid-shaped housings. *Id.* The '215 Patent, however, is not so limited. In fact, other than the location of the angle lines in some figures, there is nothing to support a requirement that the angle be "defined" by the back of the housing. There is, however, express disclosure of embodiments that do not meet this limitation, such as Figure 6A and "Z" and "S" shaped phones and clamshell phones. *See, e.g.,* '215 Patent at 7:15-17; Figures 5, 6A, 12A, and 12B. As opposed to the patent in the *C.R. Bard* case, the '215 Patent discloses multiple housing shapes, both in the written description and the figures. Thus, this case has no applicability to the claim construction of the '215 Patent.

As to Claim 1 of the '215 Patent, the obtuse angle can be formed anywhere in the housing provided: (1) it is between the top of the upper housing portion and the bottom of the lower housing portion; such that (2) the bottom of said housing is positioned substantially away from both the plane defined by the resting surface and the user's face during use; whereby (3) the position of said transmitting antenna is angled away from the user's head and face. '215 Patent at 12:15-21. If a device meets these limitations, as well as the limitations of the rest of the claim, it reads on Claim 1 of the '215 Patent.[4] The claim itself "defines" the obtuse angle. The claim does not state that the obtuse angle can be drawn anywhere on the phone nor is it one of an

---

[4] Similarly, as to Claim 12 of the '215 Patent, the obtuse angle can be formed anywhere in the housing provided: (1) it is between said upper and lower portions; so that (2) when said earpiece is placed flat against said user's ear the lower portion of said housing is angled substantially further away from the user's face than if the housing were straight; whereby (3) the electromagnetic radiation intensity experienced by the user is reduced by keeping the antenna away from the user's face. '215 Patent at 13:35-40; 14:1-2. If a device meets these limitations, as well as the limitations of the rest of the claim, it reads on Claim 12 of the '215 Patent.

infinite number of angles. The claim specifically limits the obtuse angle to being between the top of the upper housing and bottom of the lower housing "*such that* the bottom of said housing is positioned substantially away from both the plane defined by the resting surface and the user's face during use." *Id.* (emphasis added). This language defines the obtuse angle as not only being in relation to the top and bottom of the device, but also with respect to earpiece (resting surface) and the face of the user during use. The claim even *further* limits this phrase to devices "*whereby* the position of said transmitting antenna is angled away from the user's head and face." *Id.* (emphasis added). In addition to satisfying the other limitations as discussed above, the obtuse angle must also be such that the position of the antenna is angled away from the head and face of the user. Nowhere do the claims or specification *limit* the angle to the back of the phone. Additionally, the claim language itself explains how the obtuse angle is "defined" by the housing. *See supra* at Section III(B).

As the Court's holding is contrary to the claim language—the strongest evidence—and instead is based on an inapplicable case, its holding must be reversed and reconsidered.[5]

### D. THE COURT CLEARLY ERRED IN HOLDING THAT CLAIM 5 IS INDEFINITE

The Court held that Claim 5 was indefinite because Plaintiff conceded that, if the Court adopted Defendants' obtuse angle construction, then Claim 5 is indefinite. Markman Order at 14-15, Tr., p. 89 ll. 6-10. Since the Court erred in its construction of the obtuse angle term as shown above, the Court necessarily erred in holding Claim 5 to be indefinite as a result of Plaintiff's concession at oral argument.

---

[5] A similar breakdown of Claim 12(f) occurs in the same regard: the "obtuse angled portion" depends on the lower portion being angled substantially further away from the user's face than if the housing were straight when the earpiece is placed flat against the ear, whereby the radiation intensity experienced by the user is reduced because the antenna is kept away from the user's face. Thus, Claim 12 as well explicitly spells out how the housing defines the obtuse angled portion without regards to the back of the phone.

As explained in Plaintiff's briefing, Claim 5 does not require a curve to define an angle. Plaintiff's Opening Brief at 25. The "obtuse angle" in Claim 5 refers to the "obtuse angle" in Claim 1, from which Claim 5 depends. *Id.* Claim 1 requires an obtuse angle between the top of the upper housing portion and the bottom of the lower housing portion. *See id.* "In Claim 5, these two points are spatially related by a slowly curving section of the housing. Thus, the claim does not require that the curved section of the housing define an angle, but rather that the two points which define the angle are separated by a slowly curving section of the housing." *Id.* Thus, Claim 5 has a "discernible meaning supported by the claims and specification." *Id.* Further, the phrase "slowly curving section" can be interpreted as "gentle arcing bends." *See id.* at 24; '215 Patent at 11:42-47.

If the construction of the "obtuse angle" term is reconsidered and modified, then it must necessarily follow that the Court erred as to its decision with respect to Claim 5, in which case Claim 5 must be reversed and reconsidered as well.

## IV. CONCLUSION

The Court clearly erred in its construction of the "obtuse angle" term and consequently, in its holding that Claim 5 is indefinite. As a result, these holdings must be reversed and reconsidered pursuant to 28 U.S.C. §636(b)(1)(A), Fed. R. Civ. P. 72(a) and Local Rule Appendix B, 4(A).

Respectfully Submitted,

**DOWNUNDER WIRELESS, LLC**

Dated:  May 26, 2011         By:  */s/ Papool S. Chaudhari*_____
William Ellsworth Davis, III, *Lead Attorney*
Texas Bar No. 2407416
THE DAVIS FIRM, PC
111 West Tyler Street
Longview, TX 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661
Email: bdavis@bdavisfirm.com

Papool S. Chaudhari
California State Bar No. 241346
Admitted to Eastern District of Texas
Spencer Browne
Texas State Bar No. 24040589
REYES BARTOLOMEI BROWNE
5950 Berkshire Lane, Suite 410
Dallas, TX 75225
Phone: (214) 526-7900
Fax: (214) 526-7910
Email: papool@reyeslaw.com
Email: spencer@reyeslaw.com

ATTORNEYS FOR PLAINTIFF
DOWNUNDER WIRELESS, LLC

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(h), the undersigned certifies that counsel has conferred with opposing counsel in a good faith attempt to resolve this matter and that this motion is opposed.

*/s/ Papool S. Chaudhari*_____
Papool S. Chaudhari

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, the foregoing was served on all counsel of record who have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d), all others not deemed to have consented to electronic service will be served with a true and correct copy of the foregoing via email on this 26th day of May, 2011.

                */s/ Papool S. Chaudhari*_____
                Papool S. Chaudhari